IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re GEOFFREY SCOTT BRISBIN and SHERYL LYNN BRISBIN,<br><br>Debtor. | Chapter 7<br><br>Case No. 08-12236-SSC<br><br>Adv. No. 08-ap-937<br><br>(Not for Publication- Electronic Docketing ONLY) |
| OLIVER HOLDINGS, INC., an Arizona Corporation,<br><br>Plaintiff,<br>v.<br><br>GEOFFREY SCOTT BRISBIN AND SHERYL LYNN BRISBIN,<br><br>Defendants. | MEMORANDUM DECISION ON NONDISCHARGEABILITY OF OLIVER HOLDINGS' DEBT |

I. INTRODUCTION

This matter comes before the Court on the Plaintiff's August 17, 2009 Motion for Summary Judgment ("Motion"). The Defendants filed a Response and Cross-Motion for Summary Judgment ("Cross-Motion") on October 5, 2009.[1] On November 5, 2009, the Court

---

**1.** The Plaintiff subsequently filed a Reply and Response to the Cross-Motion on October 20, 2009. The Defendant filed a Reply to the Cross-Motion on November 4, 2009. The Motion and Cross-Motion were then fully briefed by the parties.

1

held oral argument on both the Motion and Cross-Motion. At the conclusion of the hearing, the Court preliminarily found in favor of the Defendants, and stated that a Memorandum Decision would follow.

In this Memorandum Decision, the Court has now set forth its findings of fact and conclusions of law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure. The issues addressed herein constitute a core proceeding over which this Court has jurisdiction. 28 U.S.C. §§ 1334(b) and 157(b) (West 2009).

## II. FACTUAL BACKGROUND

In May or June of 2005, Geoffrey Brisbin ("Brisbin") conceived a property development project which he called the 27 Dobbins Development Partners, LLC ("27 Dobbins") and for which he would seek investments for the purpose of developing real estate. In early or late July 2005, James Oliver ("Oliver"), principal of Oliver Holdings, Inc., obtained information related to the 27 Dobbins investment. It is not clear to the Court who made the first contact; however, at some point Brisbin provided Oliver with a notebook which contained the following documents: 1) Proposal for development of 40 residential lots; 2) City of Phoenix planning development statement; 3) Chicago Title Insurance Commitment; 4) Operating Agreement for 27 Dobbins; 5) CIT Soil Investigation; 6) Preliminary drainage report; 7) and a Certified Environmental Services packet. Ultimately, Oliver invested $150,000.00 in the 27 Dobbins Project.

On July 27, 2005, a Special Warranty Deed was recorded by Therrien Development, LLC ("Therrien") conveying certain real property to 27 Dobbins. In connection with the 27 Dobbins' purchase of the real property, Therrien financed a portion of the purchase price which was secured by a Deed of Trust recorded against the property on July 27, 2005 in the principal amount of $1,700,000.00. The Therrien deed of trust was released on July 28, 2006.

27 Dobbins entered into a loan transaction on August 18, 2005 with Ohio Savings

2

Bank n/k/a AmTrust ("AmTrust") and granted a deed of trust against the real property and in favor of AmTrust in the principal amount of $1,900,010.00 ("First AmTrust Loan").

On November 15, 2006, 27 Dobbins entered into a new loan transaction whereby AmTrust loaned $4,160,000.00 (the "Land Loan") which was secured by a deed of trust, assignment of rents, security Agreement and fixture filing. AmTrust also agreed to loan 27 Dobbins $7,000,000.00 (the "Unit Construction Loan"). The Land Loan and Unit Construction Loan are collectively referred to as the "Second Amtrust Loan." This new loan transaction paid off the First AmTrust Loan. Thus, since the Therrien deed of trust had been released on July 28, 2006, the only consensual lien of record was the Second AmTrust loan in the original principal amount of $11,160,000. Prior to obtaining the Second AmTrust Loan, Brisbin offered to refund Oliver's membership interest in 27 Dobbins. Oliver rejected Brisbin's offer.

The Second AmTrust Loan contained a cross default provision relating to other development projects with which Brisbin was involved. AmTrust declared the Second AmTrust Loan in default as a result of the cross default provision on October 24, 2007. Brisbin was not in default concerning the other provisions of the Second AmTrust Loan. Nevertheless, AmTrust proceeded with a non-judicial foreclosure sale, or trustee's sale, pursuant to Arizona law, divesting 27 Dobbins of title to the real property.

The Defendants filed their Chapter 7 bankruptcy petition on September 12, 2008. The Plaintiff now seeks to have its investment in 27 Dobbins deemed nondischargeable.

### III. DISCUSSION

The Plaintiff requests that its debt be excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2)(A). The Plaintiff argues that discharge is not appropriate in this case because the Defendants obtained the debt through fraud.[2] According to the Plaintiff, Brisbin made various representations and omitted critical information, upon which the Plaintiff

---

**2.** It is unclear how Ms. Brisbin should be responsible for the debt.

3

justifiably relied, resulting in the Plaintiff advancing Brisbin the sum of $150,000. Moreover, the Plaintiff relies, in part, on Arizona securities law as a predicate for Brisbin's liability. The Plaintiff alleges that the sale of membership interests in 27 Dobbins Development Partner, LLC constituted the sale of unregistered securities as defined by Arizona law.[3] Therefore, according to the Plaintiff, the representations made by Brisbin were fraudulent pursuant to A.R.S. §44-1991(West 2009). Such fraudulent conduct, the Plaintiff argues, renders the $150,000 invested in 27 Dobbins a nondischargeable debt pursuant to Section 523(a)(2)(A).

The Court finds that based upon the totality of the circumstances, the Defendants' actions do not rise to the level of fraud contemplated in 11 U.S.C. §523 (a)(2)(A). Therefore, the Court finds that the Plaintiff's debt is discharged.

**A.** <u>STANDARD FOR SUMMARY JUDGMENT</u>

A motion for summary judgment should be granted if the movant has shown that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Bankr.P. 7056(c). Ruling on a motion for summary judgment necessarily implicates that substantive evidentiary standard of proof which would apply at trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 at 252, 106 S.Ct. 2505 at 2512, 91 L.Ed.2d 202 (1986). A material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. <u>Id.</u> Procedurally, "the proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the

---

**3.** A.R.S. § 44-1841(West 2009) provides in its entirety as follows:

A. It is unlawful to sell or offer for sale within or from this state any securities unless the securities have been registered pursuant to article 6 or 7 of this chapter or are federal covered securities if the securities comply with § 44-1843.02 or chapter 13, article 12 of this title.

B. A person violating this section is guilty of a class 4 felony.

4

1  law without trial." In re Aquaslide 'N' Dive Corp., 85 B.R. 545, 547 (9th Cir. BAP 1987). Once
2  that burden has been met, "the opponent must affirmatively show that a material issue of fact
3  remains in dispute." Frederick S. Wyle P.C. v. Texaco, Inc., 764 F.2d 604, 608 (9th Cir. 1985).
4          The opponent may not assert the existence of some alleged factual dispute
5  between the parties. Liberty Lobby, 477 U.S. 242, 252, 106 S.Ct. 2505 at 2512, 91 L.Ed.2d 202
6  Instead, to demonstrate that a genuine factual issue exists, the objector must produce affidavits
7  which are based on personal knowledge, and the facts set forth therein must be admissible in
8  evidence. Aquaslide, at 547. In addition, summary judgment must be used with care and
9  restraint, Hutchinson v. United States, 677 F.2d 1322, 1325 (9th Cir. 1982), and is reviewed in
10 the light most favorable to the non-moving party. Hifai v. Shell Oil Co., 704 F.2d 1425, 1428
11 (9th Cir. 1983).

### B. NO EVIDENCE OF FRAUD UNDER ARIZONA SECURITIES LAW

The Plaintiff argues that pursuant to A.R.S. § 44-1801(26), the Plaintiff's membership interest in 27 Dobbins was an investment contract which constitutes a security.[4] More specifically, the Plaintiff appears to argue that the Operating Agreement, provided to it at the time of its investment in 27 Dobbins, constituted the security. Section 44-1801(26) defines as a "security," inter alia, an "investment contract." The Defendants admit that 27 Dobbins was

---

**4.** A.R.S. § 44-1801(26) (West 2009) provides in its entirety as follows:

"Security" means any note, stock, treasury stock, bond, commodity investment contract, commodity option, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, viatical or life settlement investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas or other mineral rights, real property investment contract or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

5

an investment contract, but deny it is a security under Arizona law.

Arizona courts have held that investment contracts are "securities" if a person: (1) invests money; (2) in a "common enterprise;" and (3) is led to expect profits solely from the efforts of the promoter or third party. S.E.C. v. W.J. Howey Co., 328 U.S. 293, 301, 66 S.Ct. 1100 (1946); Daggett v. Jackie Fine Arts, Inc., 152 Ariz. 559, 564, 733 P.2d 1142, 1147 (Ariz. App.1986); Nutek Information Systems, Inc.v. Arizona Corporation Commission, 194 Ariz. 104, 977 P.2d 826 (Ariz. App. 1998). In interpreting the term "investment contract" under the Arizona Securities Act, Arizona courts seek guidance from the federal courts, since the term is utilized with respect to the definition of a security under the Federal Securities Act of 1933 and the Securities and Exchange Act of 1934. Siporin v. Carrington, 200 Ariz. 97, 23 P.3d 92 (App. 2001).

According to the Plaintiff, Oliver invested $150,000 in a common enterprise between the Plaintiff, Brisbin,, and the other members of the 27 Dobbins, a limited liability company. The 27 Dobbins Operating Agreement detailed the formula for the allocation of profit from the project and precluded anyone other than the Manager and Assistant Manager from any participation in the management of 27 Dobbins. As such, the Plaintiff argues, investors such as himself could only expect to derive a profit from the venture solely from the efforts of others. Therefore, the investment contract entered into between the Plaintiff and Brisbin meets all of the elements under Arizona law to qualify as a security.

Arizona courts have held that membership interests in limited liability companies may constitute a security. Nutek Information Systems, Inc.v. Arizona Corporation Commission, 194 Ariz. 104, 977 P.2d 826 (Ariz. App. 1998). In Nutek Information Systems, the defendants were charged with violating Arizona securities in their marketing of membership interests in limited liability companies involved in telecommunications. Id. at 105. The issue before the court was whether membership interests in limited liability companies were, more specifically, investment contracts, as defined by the Act. The court held that based upon the facts of the case,

6

Case 2:08-ap-00937-SSC    Doc 26    Filed 01/19/10    Entered 01/19/10 10:50:55    Desc
Main Document    Page 6 of 12

the membership interests in the limited liability companies involved were securities. However, the court noted that whether a membership interest in a limited liability company constituted a security would have to be determined on a case-by-case basis.

At oral argument in this case, the Plaintiff appeared to argue that the Operating Agreement in 27 Dobbins was the security, not the membership interest in the entity.  As the Court advised the Plaintiff during the hearing, there is no legal basis for the argument that an operating agreement is a security. An operating agreement is generally a guide on how an entity will operate and how its investors will interact.  Further, if the Court accepts the Plaintiff's argument, no limited liability company in Arizona would be able to operate without the fear of a lawsuit being filed against it years later, well after the interest in the limited liability company was purchased.  There would be a never-ending disclosure requirement, from the date the investment was acquired, regardless of the duration of the operating agreement.  Arizona Securities Law does not so provide.

For purposes of its Decision, the Court concludes that the Plaintiff's membership interest in 27 Dobbins is the security.  Such a result is consistent with the Arizona cases, and federal law, discussed <u>supra.</u>  However, such a conclusion does not lead to a nondischargeable debt.  The Court concludes that there are critical deficiencies in the Plaintiff's analysis which undermine its argument for the nondischargeability of the debt.

One of the arguments advanced by the Plaintiff is that Brisbin was aware that he would have to personally guarantee the financing for 27 Dobbins, and that failing to advise the Plaintiff of this information constituted an omission of a material fact.  According to the Plaintiff, these material omissions and representations in connection with the sale of membership interests in 27 Dobbins violated A.R.S. § 44-1991(A). [5]  As such, the Plaintiff argues that the

---

**5.** A.R.S. § 44-1991(A) (West 2009) provides as follows:

A. It is a fraudulent practice and unlawful for a person, in connection with a transaction or transactions within or from this state involving an offer to sell or buy securities, or a

7

entire investment in 27 Dobbins; that is, the sum of $150,000, must be deemed a nondischargeable debt pursuant to Section 523(a)(2)(A).

The Court has reviewed the record presented by the parties, and has found no evidence that Brisbin knew, at the time that the Plaintiff purchased its membership interest in 27 Dobbins, that Brisbin would have to guarantee any financing. Moreover, the Plaintiff has failed to point to any provision in the Operating Agreement that would have prevented Brisbin from providing any type of personal guarantee. Finally, when the Plaintiff invested its money in early or late July 2005, 27 Dobbins had only incurred the purchase money obligation, due and owing to Therrien, in the amount of $1,700,000, which was secured by the Deed of Trust. For liability to exist under A.R.S. § 44-1991(A), the material misrepresentation or omission would have had to occur at the time of the purported sale of the security, or in this case, at the time that the Plaintiff initially invested its money in early or late July 2005. In this case, there is no factual indication that Brisbin was aware that he would be required to provide such a personal guarantee until 27 Dobbins entered into the Second AmTrust Loan. On November 15, 2006, when 27 Dobbins entered into the Second AmTrust Loan, Brisbin also offered to reacquire the Plaintiff's interest in 27 Dobbins, and repay the Plaintiff in full. The Plaintiff refused said offer. As will be discussed more completely hereinafter, said refusal vitiates one of the key elements in pursuing a claim under Section 523(a)(2)(A).

---

sale or purchase of securities, including securities exempted under § 44-1843 or 44-1843.01 and including transactions exempted under § 44-1844, 44-1845 or 44-1850, directly or indirectly to do any of the following:

1. Employ any device, scheme or artifice to defraud.

2. Make any untrue statement of material fact, or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

3. Engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit.

8

The Plaintiff further argues that the existence of a cross-default provision in the loan documents executed by Brisbin as to his other entities constituted another material omission by Brisbin to the Plaintiff. The Court disagrees. The cross-default provision did not come into existence until 27 Dobbins entered into the Second AmTrust Loan in November 2006. Such a loan transaction occurred substantially later than the purchase of the membership interest by the Plaintiff in early or late July 2006. Moreover, Brisbin offered to repurchase the Plaintiff's membership interest in 27 Dobbins as the time the Second AmTrust Loan was entered into between 27 Dobbins and the lender. Such a refusal would impact the ability of the Plaintiff to proceed on any claim that its debt was nondischargeable under Section 523(a)(2)(A).

Therefore, the Court concludes that the Plaintiff has failed to provide evidence that Brisbin made untrue statements of material fact, or omitted to state material facts, in connection with the Plaintiff's investment in 27 Dobbins in early or late July 2005. Thus, there is no finding of fraudulent conduct which would warrant liability under Arizona securities law.[6]

### **C.** DISCHARGE UNDER § 523(a)(2)(A)

Even if the Plaintiff had provided some evidence that Brisbin made some material misrepresentation, or omitted some material fact, the Plaintiff failed to provide any evidence that any of the other elements of a nondischargeable debt under Section 523(a)(2)(A) were shown.

---

**6.** The Defendants make a separate argument that pursuant to A.R.S. § 44-1844, a "transaction by an issuer not involving any public offering" is exempt from compliance with or liability under A.R.S. § 44-1841. The Defendants may be correct that 27 Dobbins qualified for such a statutory non-public offering exemption. However, these are exemptions from registration requirements, not the fraud provisions of Arizona securities laws. A.R.S. § 44-1841(A) prohibits the sale of securities unless they have been registered, except securities exempt under § 44-1843 or § 44-1843.01, or securities sold in exempt transactions under § 44-1844. A.R.S. § 44-1842 prohibits the sale of securities by unregistered dealers or sellers. Arizona's provision dealing with fraud in the purchase or sale of a security, A.R.S. § 44-1991, expressly includes securities exempted under § 44-1843 or 44-1843.01, and transactions exempted under § 44-1844. State v. Tober, 173 Ariz. 211, 841 P.2d 206 (1992).

Case 2:08-ap-00937-SSC    Doc 26    Filed 01/19/10    Entered 01/19/10 10:50:55    Desc
Main Document    Page 9 of 12

Pursuant to 11 U.S.C. § 523(a)(2)(A), a monetary debt is nondischargeable "to the extent obtained by false pretenses, a false representation, or actual fraud." In the Ninth Circuit, to prove nondischargeablity under §523(a)(2)(A), the Plaintiff must show "(1) that the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor justifiably relied on such representations; and (5) that the creditor sustained alleged loss and damage as the proximate result of such representations." In re Sabban, 384 B.R. 1 (9th Cir. BAP 2008); In re Diamond, 285 F.3d 822 (9th Cir. 2002); In re Slyman, 234 F.3d 1081 (9th Cir. 2000); In re Ettell, 188 F.3d 1141, 1144 (9th Cir. 1999); In re Hashemi, 104 F.3d 1122, 1125 (9th Cir. 1996); In re Eashai, 87 F.3d 1082 (9th Cir. 1996). The Plaintiff must establish the nondischargeability of a debt by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 284, 111 S.Ct. 654, 657-58, 112 L.Ed.2d 755 (1991).

For a debt to be excepted from discharge, the debtor must actually intend to defraud the creditor In re Tsurukawa, 258 B.R. 192 (9th Cir. BAP 2001). However, direct evidence of an intent to deceive is rarely shown. Hence, intent may be "inferred and established from the surrounding circumstances." In re Hultquist, 101 B.R. 180 (9th Cir. BAP 1989); In re Anastas, 94 F.3d 1280 (9th Cir. 1996); In re Dakota, 284 B.R. 711 (Bankr.N.D.Cal. 2002). The court must consider whether the totality of the circumstances paints a picture of deceptive conduct by the debtor that indicates an intent to deceive the creditor. In re Basham, 106 B.R. 453, 457 (Bankr.E.D.Va.1989). Because no single objective factor is dispositive, the assessment of intent is, thus, left to the fact-finder. In re Jacks, 266 B.R. 728 (9th Cir. BAP 2001). The intent to defraud a creditor is a finding of fact. In re Rubin, 875 F.2d 755, 759 (9th Cir. 1989). As the Court has previously set forth, there is no evidence that Brisbin made any false representations or omitted material facts at the time the Plaintiff acquired its interest in 27 Dobbins. The alleged omissions, of the personal guarantee and cross-default provision, did not come into existence until the Second AmTrust Loans was obtained.

10

More importantly, the Plaintiff presented no evidence of any of the other elements. There is nothing in the record to indicate, for instance, that Brisban failed to disclose his personal guarantee of the Second AmTrust Loan, or the cross default provisions in the Second AmTrust Loan, with the intention and purpose of deceiving the Plaintiff. Quite to the contrary, Brisbin's offer to reacquire the Plaintiff's membership interest in 27 Dobbins reflects Brisbin's desire to allow the Plaintiff to reassess its investment. Moreover, there is no evidence that the Plaintiff justifiably relied on any material misrepresentations or omissions. Brisbin's offer to repurchase the Plaintiff's membership interest provided the Plaintiff with the opportunity to review and reassess its investment. The Plaintiff chose no action and refused Brisbin's offer. Finally, the Plaintiff must show that the damages that it incurred were proximately caused by the material misrepresentations or omissions. Again, since the Plaintiff was offered a full refund of its membership investment in 27 Dobbins at the time the Second AmTrust Loan was incurred, the Plaintiff incurred no damages that were related or caused by the personal guarantee of Brisbin or the cross-default provisions incorporated into the Second AmTrust Loan documents. The Plaintiff instead chose to retain its membership interest, understanding that there were certain risks with any investment.

The loss of the Plaintiff's investment is unfortunate. However, the loss of the investment is tied to catastrophic market conditions which occurred in Arizona that no one could foresee or contemplate. The Plaintiff chose to invest in limited liability company that was engaged in real estate development. Most investments bear a certain amount of risk, but investing in Arizona real estate involves, and has always involved, more than an average amount of risk. The Plaintiff undertook to invest in a speculative venture, and has sustained the loss because of the market, not because of what Brisbin or the Defendants said or did. The Plaintiff has not shown that its obligation should be deemed a nondischargeable debt under Section 523(a)(2)(A).

11

## IV. CONCLUSION

Based upon the foregoing, the Court concludes that the Plaintiff has failed to establish all of the elements of §523(a)(2)(A). Specifically, the Court finds that the Defendants did not make a material misrepresentation or omission, did not have the requisite intent to defraud, and did not proximately cause the loss sustained by the Plaintiff. The Plaintiff also failed to show that it justifiable relied on any material misrepresentation or omission. The Court concludes that the entire debt owed to the Plaintiff is discharged. The Defendants' Cross Motion for Summary Judgment is granted, and the Plaintiff's Motion for Summary Judgment is denied.

The Court will execute a separate order incorporating this Memorandum Decision.

DATED this 19[h] day January, 2010.

*[signature]*

Honorable Sarah Sharer Curley
United States Bankruptcy Judge

12